# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARENCE LAMONT BUTLER, ) | |
| ) | Civil Action No. 11 – 826 |
| Petitioner, ) | |
| ) | District Judge Terrence F. McVerry |
| v. ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| COMMONWEALTH OF ) | |
| PENNSYLVANIA and THE ) | |
| ATTORNEY GENERAL OF THE ) | |
| STATE OF PENNSYLVANIA, ) | |
| ) | |
| Respondents. ) | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Petition for Writ of Habeas Corpus (ECF No. 3) be denied.

## II. REPORT

Clarence Lamont Butler (hereinafter referred to as "Petitioner") is a state prisoner currently incarcerated at the State Correctional Institution at Greene. Pending before the Court is his Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. He challenges his 2005 judgment of sentence for murder in the second degree, robbery, carrying a firearm without a license and criminal conspiracy. As explained herein, Petitioner is not entitled to habeas corpus relief and his petition should be denied.

### A. Relevant Factual and Procedural History

1

The facts of the case as set forth by the Court of Common Pleas of Allegheny County are as follows:

> At approximately 1:11 a.m., on October 17, 2004, the victim, John Garth, a twenty-four year old young man, stopped at the Crossroads gas station and convenience store on Eighth Avenue in the Homestead section of Allegheny County to put air in the tire of his car. While he was kneeling down beside his car doing so, he was approached by the Defendant, who pointed a gun at his head. The Defendant signaled to one of the Co-Defendants, Thomas Smith, who was standing outside the store. Co-Defendant Smith walked over to Mr. Garth and removed two cellular telephones from his pockets. Co-Defendant Smith then left the area and started running up Ann Street. He heard a gunshot; however, he did not see the actual shooting of the victim. Less than a minute later, the Defendant caught up with him. He asked the Defendant why he shot Mr. Garth and the Defendant responded that he "didn't know" and he thought that the victim had recognized him. Over the course of the next few days, both the Defendant and Co-Defendant Smith used one of the cellular telephones numerous times, which allowed the police to trace the telephone calls.

(ECF No. 10-3 at 2).

Petitioner was charged with criminal homicide, robbery, carrying a gun without a license and criminal conspiracy. He pled not guilty and proceeded to a jury trial along with one of his co-defendants, Christopher Thomas. On December 12, 2005, the jury returned a verdict of, *inter alia*, guilty of murder in the second degree. On February 8, 2006, Petitioner was sentenced to a term of life in prison, plus a consecutive term of imprisonment of seventy-two to one hundred and forty-four months. No direct appeal was filed. However, on July 2, 2006, Petitioner filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), and, pursuant to that petition, his appellate rights were reinstated. The Pennsylvania Superior Court ("Superior Court") affirmed the judgment of sentence on August 7, 2007.

On October 19, 2007, Petitioner filed a *pro se* PCRA petition. He was appointed counsel who filed an amended PCRA petition on September 16, 2008. The PCRA trial court denied the petition on October 23, 2008.

Petitioner appealed the dismissal of his PCRA petition, and, on December 30, 2008, the PCRA trial court issued its Opinion. On appeal, Petitioner raised two issues: (1) ineffective assistance of trial counsel for failing to preserve a challenge that the verdict was contrary to the weight of the evidence; and (2) PCRA trial court error in failing to grant an evidentiary hearing on his PCRA petition. The Superior Court affirmed the dismissal of the PCRA petition on August 17, 2009. Petitioner filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, but it was denied on July 27, 2010. This Petition for Writ of Habeas Corpus followed and in it Petitioner raises the following claims:

1. Ineffective assistance of trial counsel "for failing to ask the judge to not drop [the] terroristic threats [charge] [against] Christopher Thomas"

2. Ineffective assistance of trial counsel for failing to object to the "illegal admission of a polygraph test"

3. Trial court error in illegally admitting the polygraph test

4. Trial court error in not charging Heather Lint with perjury

5. Trial court "error in charging Second Degree Murder but no further charge… for gun or penalty for gun"

6. Trial court error in failing to grant a Motion for Severance [from his co-defendant]

(ECF No. 3 at 5.)

### A. Standards Governing Federal Habeas Corpus Review

1. <u>Exhaustion Requirement</u>

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review,

state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. *See*, *e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state prisoner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). An application for a writ of habeas corpus may be denied on the merits, however, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

2. Procedural Default Doctrine

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 678 (3d Cir. 1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state

court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. Id.; Sistrunk, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); Carter, 62 F.3d at 595. However, the procedural default doctrine only applies when a state procedural rule is consistently or regularly applied. Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988)).[1] A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Carter, 62 F.3d at 595.

To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show

---

[1] *See also* Doctor, 96 F.3d at 675 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494. Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. This exception to the procedural default doctrine is based on the principle that, in certain circumstances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" Carrier, 477 U.S. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).

The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant. Sawyer v. Whitley, 505 U.S. 333, 340 (1992). In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts. In order to avail himself or herself of this exception to the procedural default rule, a petitioner must make a substantial showing that he or she is actually innocent of the crime for which he or she is incarcerated. Schlup v. Delo, 513 U.S. 298, 324 (1995). "To be credible, such a claim requires [the] petitioner to support his [or her] allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. If this requirement is satisfied, the federal court must consider "whether it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004). This standard "does not merely require a showing that a reasonable doubt

[as to the petitioner's guilt] exists in the light of the new evidence, but rather that no reasonable juror would have found the [petitioner] guilty." Schlup, 513 U.S. at 329. "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." House v. Bell, 547 U.S. 518, 538 (2006).

While the petitioner's innocence need not be determined with "absolute certainty" at this "gateway stage," his or her burden is to demonstrate that, in light of the new evidence, it is more likely than not that *any* reasonable juror would have reasonable doubt as to his or her guilt. Id. In the habeas corpus context, a federal court sits to ensure that an individual is not imprisoned in violation of the Constitution and laws of the United States, "not to correct errors of fact." Herrera v. Collins, 506 U.S. 390, 400 (1993). Consequently, a finding of "actual innocence" is not an independent ground for habeas corpus relief, but rather a "gateway" through which a petitioner can pass to have a federal court consider underlying claims that would otherwise be subject to procedural default. Id. at 404. In the absence of new evidence of the petitioner's innocence, the existence of an underlying constitutional violation provides a federal court with no basis for adjudicating a procedurally defaulted claim. Goldblum v. Klem, 510 F.3d 204, 225-226 (3d Cir. 2007). Only after the presentation of new evidence may a federal court proceed to consider whether, in light of *all* relevant evidence, it is more likely than not that no reasonable juror would vote to convict the petitioner of the crime for which he or she is incarcerated. House, 547 U.S. at 537-39; Goldblum, 510 F.3d at 225-26.

Finally, the United States Court of Appeals for the Third Circuit has instructed that a petition containing exhausted and unexhausted but procedurally barred claims is not a mixed petition requiring dismissal under Rose v. Lundy, 455 U.S. 509 (1982). *See* Wenger v. Frank,

266 F.3d 218, 227 (3d Cir. 2001). Instead, the Court of Appeals held that the district court should review the merits of the exhausted claims but must not decide the merits of the claims that are barred under the procedural default doctrine. Id.

3. Standard of Review for Exhaustion (but not Procedurally Defaulted) Claims

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence . . . . The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 100 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Few state court decisions will be "contrary to" Supreme Court precedent. "Clearly established Federal law" should be determined as of the date of the relevant state-court decision. Greene v. Fisher, 606 F.3d 85, 95 (3d Cir. 2010), *aff'd*, Greene v. Fisher, 132 S. Ct. 38 (2011).

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Id. (quoting Williams, 529 U.S. at 407).

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions. In Renico v. Lett, 130 S. Ct. 1855 (2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial.

9

The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not whether it was an abuse of discretion for her to have done so -- the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." § 2254(d)(1).

Lett, 130 S. Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision -- or, for that matter, the trial judge's declaration of a mistrial -- was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event -- for the reasons we have explained -- **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

Id. at 1865, n.3 (emphasis added).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.

Id. (citing Marshall v. Longberger, 459 U.S. 422, 433 (1982)). Where the state court fails to adjudicate or address the merits of a petitioner's claims, unless procedurally defaulted, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). Petitioner's claims will be reviewed in accordance with the standards set forth above.

### B. Petitioner's Claims

As an initial matter, Respondents correctly note that all six of Petitioner's claims have not been properly exhausted in the state courts. Further, they are procedurally defaulted for purposes of federal habeas review because Petitioner would be time-barred from returning to state court and raising the claims in a subsequent PCRA petition. Thus, Petitioner's claims are barred from review. While Petitioner readily admits to this conclusion in his petition, he claims that he asked both his appellate and post-conviction counsels to raise these claims before the state courts but they did not do so for various reasons, namely because they believed the claims to be without merit.

As explained above, Petitioner can overcome the procedural default of his claims by demonstrating "cause" for the default and "actual prejudice." *See* Coleman, 501 U.S. at 750; Martinez v. Ryan, 132 S. Ct. 1309 (2012); Murray, 477 U.S. at 494. Apparently, Petitioner attempts to do so by arguing that his attorneys did not raise these claims despite requesting them to do so.

11

First, it is well established that counsel's performance is presumed to be effective. Strickland, 466 U.S. at 690. "[C]ounsel has no obligation to raise every possible claim and the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment." McFarland v. Yukins, 356 F.3d 688, 719 (6th Cir. 2004) (citing Jones v. Barnes, 463 U.S. 745, 751-54 (1983) and Smith v. Murray, 477 U.S. 527, 536 (1986)) (internal quotations omitted). An appellate attorney is not required to raise a non-meritorious or frivolous claim. United States v. Turner, 677 F.3d 570, 576 (3d Cir. 2012) (citing Jones, 463 U.S. at 751). Nor are they required to when a client instructs them to do so. Turner, 677 U.S. at 577. Rather, they "may select among them in order to maximize the likelihood of success of appeal." Showers v. Beard, 635 F.3d 625, 634 (3d Cir. 2011) (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)). The United States Supreme Court has stated:

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues . . . . A brief that raises every colorable issue runs the risk of burying good arguments – those that . . . "go for the jugular" – in a verbal mound made up on strong and weak contentions.

Jones, 463 U.S. at 751-53. "Indeed, an appellate lawyer's exercise of professional judgment in omitting weaker claims is obviously of benefit to the client: the more claims an appellate brief contains, the more difficult for an appellate judge to avoid suspecting that there is no merit to any of them." Johnson v. Tennis, 549 F.3d 296, 302 (3d Cir. 2008) (citation and internal quotation marks omitted); *see also* Ruggero J. Aldisert, *The Appellate Bar: Professional Competence and Professional Responsibility – A View from the Jaundiced Eye of One Appellate Judge*, 11 Cap. U. L. Rev. 445, 458 (1982) ("Appellate advocacy is measured by effectiveness, not loquaciousness"). "[T]o second-guess reasonable professional judgments and impose on

appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies Anders." Jones, 463 U.S. at 754.

In order to show the necessary cause and prejudice to excuse the procedural default, Petitioner cannot simply rely on his bald assertion that his attorneys failed to raise these claims despite his request to do so. Petitioner provides no factual or legal support in his petition other than simply stating that he asked his attorneys to raise the claims and they decided not to do so because they believed them to be without merit. In any event, it is clear from the record that both his direct appeal and PCRA counsel raised those claims which they believed to have merit and even a cursory review of Petitioner's habeas claims reveals that they are without merit. Pursuant to the above standards, Petitioner's attorneys were not required to raise any and all conceivable claims, including those requested by Petitioner. Petitioner has simply not shown the necessary cause and prejudice to overcome the presumption that his attorneys acted effectively and made a sound professional judgment over which claims to raise on direct appeal and in his PCRA proceedings. For this reason, the Court should find that Petitioner's claims are procedurally defaulted and barred from federal habeas review.

Alternatively, even if Petitioner could establish cause and prejudice for the procedural default of his claims, the undersigned finds that they are nevertheless without merit. Claims one and four of the petition do not relate to the constitutionality of Petitioner's judgment of sentence. Instead, they are bald assertions without any factual or legal support; specifically, that the trial court should have charged Heather Lint, one of the Commonwealth's witnesses, with perjury and should not have dropped the terroristic threat charges against his co-defendant, Christopher Thomas. It is not the role of the trial court to file charges against individuals and whether or not certain charges were or were not dropped against his co-defendant is irrelevant to Petitioner's

judgment of sentence. These claims do not afford Petitioner habeas relief, and, therefore, these claims should be denied.

Claims two and three relate to the admission of a polygraph examination. The admission of such examination is an evidentiary matter, and it is well-established that evidentiary issues are matters of state law, not federal law, and a violation of a right created by state law is not cognizable as a basis for federal habeas relief. *See* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for error of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Therefore, Petitioner's trial court error claim relating to the admission of the polygraph examination is not cognizable on federal habeas review and should be denied. In addition, the undersigned has read the trial transcript for Petitioner's criminal trial and can find no instance where a polygraph examination was admitted. Petitioner does not specify when this alleged admission of a polygraph examination occurred but it is clear that it did not occur at his criminal trial. Therefore, Petitioner's trial counsel cannot be deemed ineffective for failing to object to such admission if the admission did not occur. Thus, this claim does not warrant habeas relief and should also be denied.

The undersigned finds that claim four is impossible to comprehend, but it appears that Petitioner is claiming that he cannot be charged with or convicted of second degree murder without also being charged with or convicted of a firearms charge. Because Petitioner's claims are unexhausted, the Court is without a fully developed record to provide guidance as to this claim and Petitioner does not set forth factual or legal support for any of the claims he raises in his petition, including this one. Nevertheless, there is no federal authority that mandates criminal

defco-defendantendants charged with homicide also be charged with a firearms crime, even if the murder weapon was a gun. Thus, this claim is also without merit.

Finally, Petitioner claims that the trial court erred in denying his Motion for Severance from his co-defendant, Christopher Thomas. Petitioner's criminal docket sheet indicates that a Motion for Severance was filed on December 5, 2005, and a hearing was held on the motion that same day. The motion was denied and Petitioner and his co-defendant were tried in a joint trial. The United States Supreme Court has explained that "[i]mproper joinder does not, by itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n.8 (1986). "[A] criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." Cummings v. Evans, 161 F.3d 610, 619 (10th Cir. 1998); *see also* Jenner v. Class, 79 F.3d 736, 741 (8th Cir. 1996) (holding that habeas relief based on the trial court's failure to grant severance is only appropriate where petitioner "can establish that the failure to grant severance rendered his trial fundamentally unfair.").

Fundamental unfairness can be shown where the defenses presented by two defendants are truly "mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other." United States v. Dirden, 38 F.3d 1131, 1141 (10th Cir. 1994). Co-defendants' attempts to cast blame on one another are, as a general rule, insufficient to demonstrate fundamental unfairness. Id.; Hood v. Helling, 141 F.3d 892, 897 (8th Cir. 1998) ("Accusations between codefendants at a joint trial and the admission of evidence by one party that is harmful to the other do not necessarily make a trial fundamentally unfair.")

15

Moreover, "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro v. United States, 506 U.S. 534, 540 (1993).

Here, defense counsel argued in the hearing that severance should be granted because the defenses to be presented were antagonistic. Specifically, he argued that the Commonwealth was going to introduce co-defendant, Chris Thomas' inculpatory statement to police that he gave Petitioner the stolen gun that was used in the homicide minutes before the murder took place. On the other hand, counsel argued that Petitioner was going to testify that the gun was never provided to him at any time and that he was nowhere near the location of the murder at the time it occurred. The district attorney informed the trial court that he did not intend to use Chris Thomas' statement in his case in chief, and, thereafter, the trial court denied the motion to sever. The statement was not used at trial and the defenses presented were not mutually antagonistic. Unlike Petitioner, his co-defendant opted not to testify in his own defense, and his defense counsel maintained at trial that, while his client was at the scene of the murder, he did not participate in robbing the victim, nor did he conspire with Petitioner to do so or give Petitioner a gun in order for Petitioner to shoot the victim. Petitioner has not shown that the trial court's decision denying the motion to sever was contrary to or based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor has he demonstrated that the trial court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Therefore, habeas relief should be denied on this claim as well.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. As provided for in 28 U.S.C. § 2253, "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made the requisite showing in these circumstances. Accordingly, a certificate of appealability should be denied.

Dated: July 23, 2013

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

Cc:  Clarence Lamont Butler
     GN 6823
     S.C.I. Greene
     175 Progress Drive
     Waynesburg, PA  15370
     *Via First Class U.S. Postal Mail*

     Counsel of Record
     *Via ECF Electronic Mail*